SIDNEY LUSTER ET AL *v.* IDA L. ARNOLD ET AL

5-5316                                    458 S. W. 2d 414

Opinion delivered October 12, 1970

*David Solomon,* for appellants.

*Murphy, Arnold & Blair* and *Highsmith, Harky & Walmsley,* for appellees.

LYLE BROWN, Justice. The parties to this litigation are all the heirs of James A. Luster, deceased. Suit was instituted by appellees here, Ida Luster Arnold (daughter) and the rseven surviving children of Champ Luster (son). They named as defendants (appellants) the other living children of James A. Luster, who are in possession of the lands in which Ida, along with Champ's children, claim an interest. From the decision of the chancellor there is an appeal and cross-appeal and the numerous points will later be recited.

James A. Luster owned roughly 1000 acres of land in Independence County and some town property in Batesville, the county seat. In 1922 he conveyed a substantial portion of the property, naming three of his sons and the heirs of their bodies as grantees. The granting clause read:

[U]nto the said Sidney J. Luster, Robert E. Luster and Harry D. Luster and unto the heirs of their bodies (that is to say, unto each of said grantees, and the heirs of his body, an undivided one-third). . .

The habendum provided:

To have and to hold the same unto the said Sidney J. Luster, Robert E. Luster and Harry D. Luster, and to the heirs of their bodies in the interests or shares above mentioned. . .

The grantor died intestate in 1924, followed by the death of his widow in 1953.

Shortly after the conveyance Sidney, Robert, and Harry Luster went into possession. The lands forfeited for taxes for 1929 and Sidney and Harry each redeemed an undivided one-third interest. Sidney allegedly became the record owner (through tax title) of Robert's one-third interest, save and except a tract known as The Island, to which a sister, Winnie Luster Atchison obtained a state deed. Summarizing the title at the time this suit was filed against appellants, Sidney and Harry claimed under the deed from their father; additionally Sidney claimed to have acquired Robert's one-third except The Island; and Winnie claimed The Island. The parties named have been in possession for about forty years.

The event that precipitated this suit was the death of Robert in 1967, intestate and without widow or children. Ida Luster Arnold and the heirs of Champ Luster took the position that the death of Robert worked an investiture of his interest into the estate of James A. Luster, the father, in fee simple, which meant that the title to that interest descended by heirship as follows: Ida Arnold, one-fifth of the one-third interest; the seven children of Champ Luster, deceased, each a one thirty-fifth interest in the one-third; and in Harry, Sidney, and Winnie, each a one-fifth interest in the one-third. Ida, along with Champ's children, as plaintiffs (appellees) claimed there was no way to equitably divide the respective interests in the lands and asked that a sale be decreed. Additionally they prayed for an accounting of the rents and profits from Robert's interest since his death in 1967. The issues of survivorship, sale, and accounting were all disputed and the court found:

That the effect of the father's deed was to create a "divestible reversion" to the lands in the father; that upon the father's death intestate the divestible reversion descended to his children as tenants in common; that upon the death of Robert intestate and without bodily

heirs or widow, his interest in the divestible reversion descended to his brothers, sisters, and the children of Champ Luster, the deceased brother, in fee simple; that the tax forfeitures relied on by Sidney and Winnie, and purportedly covering Robert's interest, were void for jurisdictional defects and therefore conveyed no title; that Winnie's claim to a part of Robert's interest (The Island) by adverse possession could not prevail because the statute of limitations could not begin to run until Robert's death in 1967; that plaintiffs-appellees could not recover rents for failure of proof; and finally, that the lands could not be partitioned or sold until the death of both Sidney and Harry Luster.

Sidney, Harry, and Winnie appeal with respect to all findings as regard the title. Appellees challenge the court's refusal to order a sale and the court's denial of accounting. The points of the parties will be set out as they appear in the briefs.

Appellants' Point I. *The James A. Luster deed created a life estate in each of the grantees and a contingent remainder in the whole to the bodily heirs of any of the grantees.* We do not agree. The terms of the grants are without ambiguity and in that situation the law favors a determination of the grantor's intent from the wording of the conveyance. Our law is well settled that a reversionary interest to the lands remained in James A. Luster. When Robert died without issue that one-third interest reverted to James A. Luster or his estate. *Davis v. Davis,* 219 Ark. 623, 243 S. W. 2d 739 (1951); *Dempsey v. Davis,* 98 Ark. 570, 136 S. W. 975 (1911).

Appellants' Point II. *Sidney Luster acquired the fee simple title to the one-third interest granted to Robert Luster, except that interest acquired by Winnie Luster Atchison, a sister.* The lands were listed on the assessment records as "Luster, Sid, Bob, and Harry." They were likewise listed on the tax books, made from the assessment records. The record book for delinquent lands shows that the ownership was there treated as a unit (advertised and sold as a unit) rather than fractional

separate assessments. It is apparent that Sidney thereafter persuaded the custodian of the assessment records to change the original assessment by striking his name from the list of brothers and entering a separate assessment for Sidney's undivided one-third. We mention the status of the records because we cannot agree with appellants that the lands "were assessed to each of the three Luster brothers separately."

A stranger to the title, R. E. Brock, obtained a deed to a one-third interest (allegedly Robert's equity) from the State in 1932. In 1940 Brock deeded part of his interest so obtained to Sidney Luster. The remainder of Brock's interest forfeited some years later for taxes and Sidney purchased those lands from the State. The transactions we have recited covered all of Robert's interest except a tract known as The Island, which will be discussed in the next point for reversal.

Sidney acquired no title by virtue of the tax sales, assuming that all the taxing and sales proceedings were valid. That is because Sidney and Robert were tenants in common. In *Spikes* v. *Beloate,* 206 Ark. 344, 175 S. W. 2d 579 (1943), we said:

It is well settled that a tenant in common cannot add to or strengthen his title by purchasing title to the entire property at a tax sale, nor by purchasing it from a stranger who has purchased at such sale; that such purchase amounts to no more than a redemption, which inures to the benefit of the other tenants as well as himself, and confers no right upon such tenant so purchasing except to demand contribution from his co-tenants.

Sidney also relies on Ark. Stat. Ann. § 84-925 (Repl. 1960). He contends that statute extinguishes Robert's interest. The cited statute provides that when a life tenant fails to redeem from a tax forfeiture, the person next entitled to the lands in remainder or reversion may redeem and extinguish the life tenant's title. The statute is not applicable because Sidney and Robert were tenants in common.

Finally with respect to Point II, the validity of the tax forfeitures was before the chancellor and they were found to have been invalid. There was an abundance of evidence to support that conclusion. Several of the defects were jurisdictional. There was evidence of an excessive extension of taxes, both for county and school purposes, and several tracts forfeited under "part" descriptions.

Appellants' Point III. *Winnie Luster Atchison acquired the fee simple title to the one-third interest in The Island granted to Robert Luster for life.* In the 1929 tax forfeiture of Robert's interest was a tract of land known as The Island. Winnie obtained a deed from the State in 1935. She also claims to have since been in continuous possession of one-third of The Island, collected the rents therefrom, and "farmed the one-third that had been set aside for Robert." The chancellor found the tax deed to be void and also held against Winnie on her assertion of title by adverse possession. With the chancellor's findings we agree.

As noted in considering Point II, there was adequate evidence to support the chancellor's finding that the tax deed was void. Winnie, therefore, took no interest through the void deed.

Neither may Winnie recover by adverse possession. The rule is that the cause of action to recover possession of property accrues to reversioners and remaindermen upon the death of the life tenant. *Banks* v. *Green,* 35 Ark. 84 (1879); *Ogden* v. *Ogden,* 60 Ark. 70, 28 S. W. 796 (1894); *Watson* v. *Hardin,* 97 Ark. 33, 132 S. W. 1002 (1910). The reason for the rule was announced in *Hayden* v. *Hill,* 128 Ark. 342, 194 S. W. 19 (1917):

> [T]he remainderman or reversioner has a right to attribute the holding to some character of contract with the life tenant. Until the death of the life tenant, no duty in law is imposed on a remainderman to inquire from the party in possession whether he is a disseisor. During the life tenancy he has a right to treat the occupant of the land as a licensee. . .

Applying the rule in Hayden, any adverse possession by Winnie did not run against the reversioners until Robert's death since they had a right to treat her as a licensee occupying the land through the permission of Robert. Seven years have not passed since Robert's death in 1967, therefore Winnie may not recover by adverse possession.

Appellees' Point I on Cross-Appeal. *Upon the death of Robert, the interest of appellees in the property subject to Robert's life estate vested, thereby giving appellees a present undivided fee simple interest in the lands. Partition being impractical a sale should have been ordered.* What we have said under appellants' Point I answers the first part of the contention in the affirmative. Then we reach the question of whether the owners of the undivided interests in fee are entitled to partition as against the owners of undivided interests for life which are followed by contingent remainder interests. We agree that they are entitled to partition or sale. *McGee* v. *Hatcher,* 217 Ark. 402, 230 S. W. 2d 41 (1950). There we faced a somewhat similar problem and we approved, as an entitlement, partition in kind which bound the holders of the fee, the life estate and the future interests. In the case at bar. it is readily apparent that partition in kind would be prejudicial to some of the owners and that fact necessitates a sale. Since appellees and cross-appellants are entitled to partition which cannot be carried out equitably they have a right to have the lands sold. *Ward* v. *Pipkin,* 181 Ark. 736, 27 S. W. 2d 523 (1930).

Appellees' Point II on Cross-appeal. *Sufficient proof was presented for determination of appellees' aliquot share of rents and the chancellor erred in refusing judgment therefor.* The undisputed proof showed that after Robert's death in 1967 and until the time of trial in 1969, Sidney received a minimum of $2046 in rentals; Winnie received $1,101.29; and Harry collected a minimum of $500. Those were all the rents that were definitely established as having been received by the named parties. Appellees are entitled to an accounting for the

enumerated rents and to receive their proportionate shares.

Affirmed on appeal; reversed and remanded on cross-appeal.